IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SIONE HOKO,<br><br>    Plaintiff,<br><br>vs.<br><br>HUISH DETERGENTS, INC., n/k/a/ SUN PRODUCTS CORPORATION,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT MOTION FOR LEAVE TO FILE ADDITIONAL MEMORANDA<br><br><br><br>Case No. 2:09-CV-361 TS |

The Court has before it Defendant Huish Detergents, Inc.'s ("Huish")[1] Motion for Summary Judgment[2] and Plaintiff Sione Hoko's ("Mr. Hoko") Motion for Leave to File Additional Memoranda.[3] In Mr. Hoko's Second Amended Complaint, Mr. Hoko, a former employee of Huish, alleges that Huish (1) discriminated against him on his basis of race, color,

---

[1] Huish Detergents, Inc. is now known as Sun Products Corporation.

[2] Docket No. 45.

[3] Docket No. 67.

1

and national origin in violation of Title VII of the Civil Rights Act of 1964[4] ("Title VII") and treated him more harshly than similarly situated employees in violation of Title VII; (2) retaliated against him for complaining of discrimination by harassing him and terminating his employment in violation of Title VII; and (3) wrongfully terminated his employment in violation of Title VII.[5] Huish moves for summary judgment on all claims asserted against it.

A hearing was held on December 20, 2010. Having reviewed the parties' respective briefing and the arguments presented at the hearing, the Court issues the following ruling.

I. BACKGROUND

Huish Detergents, Inc. ("Huish") operates a facility in Utah which produces detergents and other cleaning and laundry products for residential and commercial use. Plaintiff Sione S. Hoko ("Mr. Hoko") was hired effective September 16, 1989, at Huish's Utah facility as a forklift driver in the Warehouse Department. Mr. Hoko identifies himself as Asian/Pacific Islander and of Tongan origin. In 1991, Mr. Hoko received a promotion to lead person in the Warehouse Department. In July 1995, he was promoted to Supervisor in the Traffic Department. In December of 1996, Mr. Hoko's position was changed from Supervisor of the Traffic Department to a Supervisor in the Raw Material Department when the Raw Material Department was separated from the Traffic Department. Mr. Hoko continued in this position until the date of his termination, June 27, 2005.

---

[4] 42 U.S.C. § 2000e-2(a).

[5] Docket No. 24, at 5-8.

During the course of Mr. Hoko's employment, Mr. Hoko received copies of the Huish Policy Book in at least 1991, 1995, 1999, 2002, 2003, and 2004. This Policy Book contains an explicit disclaimer which disclaims any intent on the part of Huish to create an employment contract.[6] Mr. Hoko acknowledged receipt of the Huish Policy Book by signing an acknowledgment statement.[7] This Acknowledgment states that:

> All employees of the Company are employees at-will and, as such, are free to resign at any time without reason. The Company, likewise, retains the right to terminate an employee's employment at any time with or without reason. Nothing in this Policy Book (or any other document provided to an employee) is intended to be, nor should it be, construed as a guarantee that employment or any benefit will be continued for any period of time.[8]

The Huish Policy Book further contained Huish's policies concerning prohibited harassment and its complaint procedure.[9] The Policy Book instructs "[a]ny employee who believes that he/she is being harrassed . . . should immediately report the concerns to any supervisor, any manager, [or] any member of the Human Resource Department including the Human Resource Manager."[10] The Policy Book further provides that "[a] prompt and thorough investigation will occur and, if it is determined that prohibited harassment has occurred, the

---

[6]Docket No. 46, Ex. B.

[7]*Id.* at Ex. C.

[8]*Id.*

[9]*Id.* at Ex. D.

[10]*Id.*

3

Company will take appropriate disciplinary action . . . up to and including discharge of the offending employee."[11]

Mr. Hoko was trained on four separate occasions about Huish's Equal Employment Opportunity Policy and signed four separate Acknowledgments of this training. These Acknowledgments state that Mr. Hoko understood the policy and agrees "to promptly report any conduct that I believe violates the policy."[12] Mr. Hoko further acknowledged "that the company wants to know if there is harassment at work and will not take any action against me for reporting such inappropriate conduct."[13]

Mr. Hoko used Huish's complaint procedure on two separate occasions prior to his termination. While he was still a lead man, Mr. Hoko complained about a co-worker harassing him to the Director of Human Resources. In his deposition, Mr. Hoko testified that he felt the problem was resolved.[14] On the second occasion, another employee complained that Mr. Hoko was calling her a racist. Mr. Hoko again testified in his deposition that the problem was handled fairly and his concerns were resolved.[15]

---

[11]*Id.*

[12]*Id.* at Ex. E.

[13]*Id.*

[14]*Id.* at Deposition of Sione Hoko ("Hoko Depo."), July 21, 2008, at 30-35.

[15]*Id.* at 33-55.

The 2004 Policy Book also included an Internet Policy, which provided that "[e]mployees with access to the Internet are required to use this access for business purpose only. Personal use of the Internet on the Company's computers is not allowed."[16]

Huish also distributed a separate Computer Security Policy in 1999 and in 2004. This Computer Security Policy stated that "Huish Detergents computer equipment is to be used only to conduct company business. Employees found in violation of this policy are subject to disciplinary action, up to and including termination of employment."[17] Mr. Hoko signed each of these Computer Security Policy statements and certified that he read and understood the policy and would comply with its terms.[18]

In June of 2005, internet access at Huish varied based upon an indvidual's position within the company. Employees who were granted access to the internet were given a log-on identification and a password. The lowest level of internet access was called "white list allow." This level of access only permitted the employee to go to a limited number of websites necessary to perform their work at Huish. The next level of access, called "filtered" access, permitted employees to go to any website except certain categories of websites deemed inappropriate by Huish's computer security systems. The final level of access, called "filtered light" or just "light," permitted employees to visit certain websites that were blocked for all other employees.

In June 2005, many supervisors, including Mr. Hoko, had "filtered" access to the internet.

---

[16]*Id.* at Ex. F.

[17]*Id.* at Ex. G.

[18]*Id.*

As a Raw Materials Supervisor, Mr. Hoko's job description provided that only ten percent of the supervisor's time was to be spent sitting. Mr. Hoko signed an acknowledgment of this job description[19] and further testified in his deposition that this description was accurate.[20]

In May and June of 2005, Mr. Hoko's supervisor, Shane McPhie, learned that Mr. Hoko was spending a lot of time in the supervisor's office. Also around this time, McPhie became aware of two materials spills during Mr. Hoko's shift of which Mr. Hoko was not aware. McPhie felt that Mr. Hoko should have been aware of this incident as Supervisor of Raw Materials.

Shortly thereafter, McPhie requested that Huish's IT Department monitor Mr. Hoko's use of the internet for a few days. The audit was approved by Human Resources and conducted from mid to late June of 2005. The report showed that Mr. Hoko was spending a significant amount of his shift on the internet looking at websites unrelated to his work at Huish. On June 27, 2005, McPhie and the Director of Human Resources, Debbie Mair, met with Mr. Hoko and terminated his employment. They explained that the termination was caused by his violation of Huish's computer policy.

Approximately two weeks after his termination meeting, Mr. Hoko returned his Employee Exit Interview Form to Huish. In the form, for the first time, Mr. Hoko complained that McPhie yelled at him and discriminatorily applied the computer policy differently to him and

---

[19]*Id.* at Ex. H.

[20]*Id.* at Hoko Depo., at 38-39.

fired him in retaliation for complaining of discrimination. Huish investigated the claim and determined that Mr. Hoko was not discriminated against.

Mr. Hoko filed suit on April 24, 2009, and filed his Second Amended Complaint on January 13, 2010. Huish filed for summary judgment on July 12, 2010.

## II. DISCUSSION

Mr. Hoko's Second Amended Complaint raises three categories of claims under Title VII: (1) unlawful discrimination, (2) unlawful retaliation, and (3) wrongful termination. The Court will address each of these categories in turn.

A.     LEGAL STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[21] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[22] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[23] In opposing a motion for summary judgment, "[t]he nonmoving party 'may not rest upon the mere allegations or denials of his pleadings' to avoid summary judgment."

---

[21] *See* Fed.R.Civ.P. 56(a).

[22] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[23] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

7

Instead, the non-moving party must provide sufficient evidence "such that a reasonable jury could return a verdict for the non-moving party."[24]

B.     DISCRIMINATION

Title VII prohibits an employer from discriminating against any individual because of "race, color, religion, sex, or national origin."[25] The burden-shifting scheme of *McDonnell Douglas Corp. v. Green*,[26] applies in this case.

> Under *McDonnell Douglas*, if the plaintiff can establish a prima facie case of discrimination . . . , the burden shifts to the defendant to show a legitimate non-discriminatory . . . reason for the adverse employment action. If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretext.[27]

*1.     Harassment / Hostile Work Environment*

Mr. Hoko alleges that Huish and/or its agents harassed him because of his race, color, and national origin in violation of Title VII. "To constitute actionable harassment, the conduct must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[28] For Mr. Hoko's harassment claim to survive summary judgment,

---

[24]*Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000).

[25]42 U.S.C. § 2000e-2(a)(1).

[26]411 U.S. 792 (1973).

[27]*Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006) (citation omitted).

[28]*Bolden v. PRC, Inc.*, 43 F.3d 545, 550-551 (10th Cir. 1994) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

> [H]is facts must support the inference of a racially hostile environment and support a basis for liability. Specifically, it must be shown that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privileges of employment, and (2) the harassment was racial or stemmed from racial animus.[29]

Moreover, Mr. Hoko must show "more than a few isolated incidents of racial enmity. Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments."[30]

In reviewing the materials presented by the parties, the Court finds that Mr. Hoko has not carried his burden to survive a motion for summary judgment on his harassment / hostile work environment claim. Mr. Hoko has not identified any statement made by an agent of Huish that would constitute discrimination on the basis of race. The sole incident cited by Mr. Hoko is an alleged encounter between Mr. Shane McPhie and Mr. Hoko concerning a Glycerin spill which occurred during Mr. Hoko's shift. Mr. Hoko alleges that Mr. McPhie yelled at him and that this treatment was based on Mr. Hoko's race, color, or national origin. Outside of Mr. Hoko's allegations, there is no support in the record that Mr. McPhie's actions were based on racial animus. Moreover, even if these allegations were true, this one isolated incident is not so severe or pervasive as to support a claim for harassment / hostile work environment. Therefore, because Mr. Hoko has failed to carry his burden, the Court will grant Huish's Motion on Mr. Hoko's discrimination / hostile work environment claim.

---

[29] *Id.* at 551 (internal citations omitted).

[30] *Id.* (internal quotation marks and citation omitted).

## 2. Disparate Treatment

"To make out a prima facie case of discrimination, [Plaintiff] must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees."[31] In his Second Amended Complaint and in his opposition to Huish's motion, Mr. Hoko identifies two instances which he argues demonstrate disparate treatment: (1) how he was treated in relation to the Glycerin spill incident, (2) how he was treated in relation to the internet. The Court will address each of these in turn.

### i. The Glycerin Spill

Mr. Hoko claims that how he was treated following the Glycerin spill gives rise to a claim for disparate treatment. Mr. Hoko argues that because he was allegedly yelled at by Mr. McPhie while other employees were not, Huish should be held liable for violating Title VII.

In reviewing this claim, the Court finds that this incident does not rise to the level of an adverse employment action. As the Tenth Circuit has previously held,

> Only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action.[32]

---

[31] *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

[32] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006) (quotation omitted).

The Court finds that although being yelled at or blamed for an incident is certainly adverse, it is not an actionable adverse employment action under Title VII. Therefore, the Court will grant Huish's motion on this claim.

  ii.  *Internet Access*

Mr. Hoko further claims that how Huish treated him in relation to other employees regarding the internet violated Title VII. Mr. Hoko claims that Huish violated Title VII by conducting an audit of his internet usage while not auditing other similarly situated employees. According to Mr. Hoko, Huish disciplined four other employees who similarly violated the Internet Policy by reducing their internet access to white list allow, rather then performing an audit. He argues that by not similarly reducing his access, and instead leaving him with broader "filtered" access, Huish left him vulnerable to the temptation to abuse the Internet Policy.

The Court finds this argument fails on two grounds. First, Mr. Hoko and the employees identified are not similarly situated. Mr. Hoko was a Supervisor, while the other employees were lesser-ranking employees. Thus, providing Mr. Hoko with greater access to the internet appears to be necessitated by his superior position. Mr. Hoko has failed to bring forth any evidence to demonstrate that the decision was anything but motivated by a legitimate business need.[33]

Second, giving Mr. Hoko broader internet access is not an adverse employment action. If anything, allowing Mr. Hoko to continue with broader access to the internet in order to fully perform his duties was a positive employment action.

---

[33]*See Timmerman v. U.S. Bank*, 483 F.3d 1106, 1121 (10th Cir. 2007) (noting that it is the plaintiff's burden "to establish not only that differential treatment occurred, but to rule out nondiscriminatory explanations for the differential treatment").

Because of these reasons, Mr. Hoko has failed to demonstrate how Huish's treatment of him in regards to the internet violated Title VII. Therefore, the Court will grant Huish's motion on this claim.

C.  RETALIATION

Mr. Hoko claims both retaliatory harassment and retaliatory termination. As this Court has set forth previously, "[p]ursuant to Title VII, an employer is prohibited from retaliating against an employee because she 'has opposed any practice made an unlawful employment practice by Title VII."[34] "To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[35]

*1.  Retaliatory harassment*

Mr. Hoko's first claim for retaliatory harassment is based on Mr. McPhie's actions of yelling at him and blaming him for the Glycerin spill. Mr. Hoko argues that Mr. McPhie treated him in this manner because of his complaint to Mr. McPhie that he was managing the department in a discriminatory manner. The Court finds that Mr. Hoko's own chronology does not support his claims. According to Mr. Hoko, he did not complain to Mr. McPhie about discrimination until after Mr. McPhie yelled at him about the glycerin spill. Thus, Mr. McPhie's actions could

---

[34]*Burrell v. Utah Dep't of Workforce Servs.*, 2008 U.S. Dist. LEXIS 8553, *23-24 (D. Utah Feb. 5, 2008) (quoting 42 U.S.C. § 2000e-3(a)).

[35]*Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 20066).

have not been in retaliation of Mr. Hoko's complaint. Therefore, this claim fails and the Court will enter summary judgment in favor of Huish.

Mr. Hoko's second claim for retaliatory harassment is based on Mr. McPhie's request for an audit of Mr. Hoko's internet usage after Mr. Hoko complained to Mr. McPhie and in preemption of Mr. Hoko complaining to a higher supervisor. Mr. Hoko argues that Mr. McPhie's request for an audit was in retaliation to Mr. Hoko complaining of Mr. McPhie's discriminatory conduct. The Court finds that this claim fails to satisfy the prima facie elements of a claim for retaliation. As explained above, to establish a prima facie case of retaliation, a plaintiff must demonstrate that the action taken by the employer was one a reasonable employee would have found to be materially adverse. The United States Supreme Court has explained that whether an action is materially adverse "means it might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[36] The request of an internet audit would not dissuade a reasonable worker from making or supporting a charge of discrimination. Indeed, the only type of employee this would dissuade is one who is in violation of the company's internet policy. Therefore, this claim fails to establish a prima facie case for retaliation and the Court will enter summary judgment in favor of Huish.

### 2. *Retaliatory Termination*

Mr. Hoko argues that his termination was in retaliation of his complaint that Mr. McPhie was managing the department in a discriminatory manner. In proving a claim for retaliatory termination, once the plaintiff has met the burden to establish his prima facie case, the burden

---

[36] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the discharge."[37] If the defendant can make this showing, the burden then shifts to the defendant to "demonstrate that the proffered explanation is a pretext for retaliation."[38]

Even assuming that Mr. Hoko could satisfy his burden to show a prima facie case for retaliatory termination, the Court finds that Huish has met its burden to show a legitimate, nondiscriminatory reason for the discharge. As Mr. Hoko explained in his deposition, throughout the year 2005, he was spending time on the computer looking at internet sites unrelated to his work.[39] The computer audit performed by Huish showed that from June 12 through 22 and June 26—with the exception of one day—Mr. Hoko was spending two to five hours of his shift visiting internet sites unrelated to his work for Huish.

The Court further finds that Mr. Hoko has not met his burden to show that the proffered reason was pretext. To show pretext, Mr. Hoko "must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[40] Mr. Hoko provides no evidence of such pretext and merely realleges his prior allegations. Because Huish has provided a legitimate, nondiscriminatory reason for its actions,

---

[37]*Argo*, 452 F.3d at 1202.

[38]*Id.* at 1203.

[39]Docket No. 46, Hoko Depo.

[40]*Argo*, 452 F.3d at 1203.

and Mr. Hoko has failed to show any evidence of pretext, the Court will grant summary judgment in favor of Huish on this claim.

D. WRONGFUL TERMINATION

Mr. Hoko claims that his termination was wrongful because Huish failed to follow and abide its own policies outlined in its Policy Book. The Court finds that this claim fails as a matter of law. As made clear by the record, Mr. Hoko's employment with Huish had no specified term of duration. Under Utah law, there is a presumption that "'any employment contract which has no specified term of duration is an at-will relationship.'"[41] Moreover, the record makes clear that Huish repeatedly informed its employees that they were employed at-will. The Huish Policy Book, in several locations, specifically disclaimed any intent to create a contract with the employee for a specified period of time. Additionally, the Acknowledgment signed by Mr. Hoko expressly stated that he was an at-will employee.

As Utah courts have made clear, "[a]n at-will relationship can be terminated by either the employer or the employee at any time and 'for any or no reason.'"[42] "Moreover, an at-will employee has 'no right of action against his employer for breach of the employment contract upon being discharged.'"[43] In light of this clear precedent, the Court finds that Mr. Hoko was an at-will employee of Huish and has no claim for wrongful termination. Therefore, the Court will grant summary judgment in favor of Huish on this claim.

---

[41]*Kreimeyer v. Hercules, Inc.*, 892 F. Supp. 1374, 1376 (D. Utah 1994) (quoting *Berube v. Fasion Centre, Ltd.*, 771 P.2d 1033, 1044 (Utah 1989)).

[42]*Id.* (quoting *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 53 (Utah 1991)).

[43]*Id.* (quoting *Brehany*, 812 P.2d at 53).

E.   MOTION FOR LEAVE TO FILE ADDITIONAL MEMORANDA

Mr. Hoko moves the Court for leave to file additional memoranda in opposition to Defendant's motion.[44] Mr. Hoko represents to the Court that he has located an attorney to represent him in the matter and that the attorney can better advance his arguments in opposition to Defendant's motion. Mr. Hoko filed his request in September 28, 2010, yet no counsel has entered an appearance on his behalf. Because no counsel has entered an appearance, the Court will deny the motion as moot.

## III. CONCLUSION

It is therefore

ORDERED that Defendant Huish Detergents, Inc.'s Motion for Summary Judgment (Docket No 45) is GRANTED. It is further

ORDERED that Plaintiff's Motion for Leave to File Additional Memoranda (Docket No. 67) is DENIED as MOOT.

The Clerk of the Court is directed to enter judgment in favor of Defendant and close the case forthwith.

DATED   December 21, 2010.

BY THE COURT:

TED STEWART
United States District Judge

---

[44]Docket No. 67.